UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBYN ANN HARRIS,

    Plaintiff,

v.                                      CASE NO. 3:21-cv-803-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held on November 3, 2020, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from January 18, 2019, the alleged disability onset date, through December 14, 2020, the date of the decision.[2] (Tr. 11-24, 38-68.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 18.)

[2] Plaintiff had to establish disability on or before December 31, 2023, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 12.)

I.   **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

II.   **Discussion**

    A.   **Issue on Appeal**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment failed to account for her mild "paragraph B" limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (Doc. 24 at 7-8 (citing, *inter alia*, SSR 96-8p, 83-14, 85-28, 16-3p, 85-16, and 20 C.F.R. § 404.1520a(d)(3)).)  As such, Plaintiff argues, the RFC is inconsistent with the ALJ's assessed "paragraph B" criteria limitations, the medical evidence of record, and Plaintiff's statements. (*Id*. at 10.)  Furthermore, according to Plaintiff:

> The ALJ's error is not "harmless," as an RFC assessment must be based on all of the relevant evidence in the case record and must address all of the individual limitations associated with a claimant's mental impairment(s).  20 C.F.R. § 404.1545; SSR 96-8p; SSR 85-16. . . . Notably, the vocational expert classified [Plaintiff's] work as semi-skilled and skilled with [a Specific Vocational Preparation ("SVP")] of 4 and 5. . . .
> In addition, in light of [Plaintiff's] advanced age, past relevant work, and educational level; a finding of disability would be directed under the Medical-Vocational Guidelines under Grid Rule 202.06 or 201.06 at the light exertional level.

(*Id*. at 10-11.)

Defendant responds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe at step two of the sequential evaluation process[3] and would not cause appreciable limitations

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

3

on her RFC, because "the evidence establishes no more than mild mental limitations, including by Plaintiff's normal mental status examinations" and the State agency doctors' findings that the mental impairments were not severe.  (Doc. 25 at 3-4.)  Defendant explains:

> Contrary to Plaintiff's assertion, a mild finding under the "paragraph B" criteria does not mean Plaintiff requires a particular limitation as part of her RFC. . . . Rather, the ALJ considers a claimant's limitations under the paragraph B findings when determining her RFC.
> . . . Here, the ALJ considered Plaintiff's mental impairments when evaluating her RFC, and substantial evidence supports his finding that Plaintiff did not require mental limitations as part of her RFC.

(*Id.* at 4-6 (citing, *inter alia*, SSR 96-8p).)

### B.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 18, 2019.  (Tr. 14.)  At step two, he found that Plaintiff had the following severe impairments: "right ankle fracture due to motor vehicle accident, status post [Open Reduction Internal Fixation ("ORIF")], osteoarthritis, dysfunction of major joints, rotator cuff tear, diabetes mellitus[,] and hearing loss with history of Meniere's disease."  (*Id.*)  The ALJ stated that he "considered all of the claimant's medically determinable impairments, including those that [were] not severe, when assessing [her RFC]."  (*Id.*)

4

The ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, [did] not cause more than minimal limitation in [her] ability to perform basic mental work activities and [were] therefore non[-]severe." (Tr. 15.) The ALJ explained:

> As for the claimant's alleged anxiety and depression, the claimant testified that her anxiety caused her to toss/turn at night (and causes sleep issues). The evidence shows that she has treated with her [primary care provider ("PCP")] (Palms Medical Group) for her depression and alleged difficulty concentrating, feeling down, impaired judgment[,] and difficulty maintaining sleep (Exhibit 14F). The bulk of [the] psychiatric exams have been generally unremarkable (Exhibits 14F, 17F) except for agitation and irritable mood/affect (Exhibit 17F/8). Memory was intact (Exhibits 14F, 17F). She reported feeling much better after restarting escitalopram (Exhibit 14F/34). In January 2020, she reported that functioning was not difficult at all (Exhibit 14F/59) and reported hydroxyzine worked well in the past (Exhibit 14F/59). Since these impairments have not caused more than minimal functional limitations, they are not severe.
>
> As for the opinions of the DDS mental health specialists found at Exhibits 1A and 4A, the [ALJ] finds that they are persuasive. These opinions are supported by the overall objective medical evidence that shows conservative care through PCP with generally normal psychiatric exam findings (Exhibits 10F, 14F, 17F). These opinions are consistent with one another but there are no other opinions consistent or inconsistent with them.
>
> In making this finding, the [ALJ] has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. . . .
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. . . .
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. . . .
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. . . .
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas **and** the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non[-]severe (20 CFR [§] 404.1520a(d)(1)).
>
> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis.
>
> She alleged having [Attention Deficit Disorder ("ADD")] (Exhibit 6E) at the hearing. She stated that she has to write down things because she is unable to remember things. She also alleged problems with cooking and recipes. She stated that [she] does not complete 1 chore and will start another chores [sic] before she finished the other one. The evidence does not support that this is a medically determinable impairment.

(Tr. 15-16 (emphasis in original).) Then, at step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16.)

Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work with the following additional limitations: "only occasional use of [the] right ankle for foot controls"; no climbing of ladders, but occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling; occasional reaching overhead with the right dominant arm; and avoiding even moderate exposure to noise and hazards, including unprotected heights and moving machinery.  (*Id.*)  The ALJ stated that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  (Tr. 17.)  Also, the ALJ summarized Plaintiff's testimony, stating, in relevant part, that Plaintiff had "alleged sleep problems due to anxiety, neuropathy and back pain."  (*Id.*)

Further, the ALJ addressed the relevant evidence of record and stated that the bulk of Plaintiff's psychiatric examinations was generally unremarkable except for depressed mood.  (Tr. 18-21 (citing Exhibit 14F/43).)  The ALJ noted that Plaintiff's memory was normal.  (Tr. 20 (citing Exhibit 14F/9, 17, 25, 32, 55, 68, 75, & Exhibit 17F/8).)  The ALJ further noted that the bulk of Plaintiff's treatment was "rather conservative."  (Tr. 21.)  The ALJ also noted that Plaintiff "had a rather fair set of [activities of daily living]," as

7

follows:

> Following ORIF, in February 2019, she continued to report that her ankle did not give her pain despite doing an "awful lot of walking at the park" the day before (Exhibit 5F/153). At the hearing, she testified that she is able to prepare simple meals (froze[n] breakfast meals, instant coffee, sandwich or bowl of soup), do one household chore for the day (with breaks), grocery shop, drive short distances (for a few miles but [was] limited due to stiffness in her ankle), visit with her sister and attend church twice a month. All of these activities show that she is not as limited as alleged and certainly not disabled as she would still be able to perform work within the limitations set forth in the established [RFC] in light of the objective medical evidence.

(Tr. 22.) The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20.) The ALJ then addressed and stated that he had "fully considered the medical opinions and prior administrative medical findings" in the record. (Tr. 22-23.)

At step four, considering the Vocational Expert's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work of an accounting clerk (DOT No. 216.482-010, sedentary per DOT, with an SVP of 5) and a medical records clerk (DOT No. 245.362-010, light per DOT, with an SVP of 4), both as actually and generally performed. (Tr. 23.) Therefore, Plaintiff was not disabled from January 18, 2019 through December 14, 2020.

8

(Tr. 23-24.)

### C. Analysis

The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record. First, the ALJ reasonably concluded that Plaintiff's anxiety and depression were not severe impairments at step two of the sequential evaluation process. Notably, Plaintiff does not argue that the ALJ's step two findings as to her mental impairments are not supported by substantial evidence.

Moreover, contrary to Plaintiff's argument, the ALJ's RFC assessment is not inconsistent with the "paragraph B" findings, the medical evidence of record, or Plaintiff's testimony. The ALJ did not err in failing to include any mental limitations in the RFC assessment, despite finding that Plaintiff had mild limitations in the four broad functional areas of the PRT. As the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, [did] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities," the ALJ did not need to assess any mental limitations in the RFC and could potentially rely on the Grids to determine that Plaintiff was not disabled, even though the ALJ here relied on the testimony of a vocational expert ("VE"). *See Phillips v. Barnhart*, 357 F.3d 1232, 1243 (11th Cir. 2004) ("If the ALJ determines that Phillips's nonexertional limitations do

9

not significantly limit her basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine if Phillips is disabled.  If, however, the ALJ determines that Phillips's nonexertional limitations significantly limit her basic work skills at the sedentary work level, then the ALJ must consult a vocational expert."); *see also* SSR 83-14 ("Nonexertional impairments may or may not significantly narrow the range of work a person can do."); SSR 96-8p ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B . . . .").

      Here, the ALJ considered Plaintiff's mental impairments as part of the RFC evaluation and expressly stated that his RFC assessment reflected the degree of limitation found under "paragraph B."  (Tr. 14, 16.)  Importantly, the ALJ's decision to not include any mental limitations as part of the RFC is supported by substantial evidence.  As the ALJ explained, the bulk of Plaintiff's psychiatric examinations was generally unremarkable, except for depressed mood and agitation/irritability, and her treatment was "rather conservative."  (Tr. 15, 18-21, 640-41, 772, 775, 791, 798, 809, 821, 834, 841,

10

883; *see also* Tr. 625-26 ("She takes Xanax for anxiety. . . . Her mental status shows that she is alert and oriented and able to give a good history with no evidence of psychosis.").) The ALJ also correctly noted that Plaintiff's memory was normal and she reported feeling much better after restarting escitalopram. (Tr. 20, 783, 791, 798, 800, 809, 821, 834, 841, 883; *cf.* Tr. 778 (reporting worsening of Plaintiff's symptoms after she did not take escitalopram for a few months).)

Additionally, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 17.) The ALJ acknowledged Plaintiff's testimony that her anxiety, along with other conditions, affected her sleep, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17, 20, 56.) Plaintiff does not seem to challenge this finding. In any event, the ALJ properly considered Plaintiff's report from January 9, 2020 that her functioning was not difficult at all, which, together with her daily activities, showed that Plaintiff was not as limited as alleged. (Tr. 22, 53-56, 825.)

Plaintiff also does not challenge the ALJ's consideration of the State agency doctors' opinions that found Plaintiff's mental impairments were non-

11

severe and caused only mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace, and adapting or managing oneself. (Tr. 15 (finding the opinions of James Levasseur, Ph.D. and Nancy Hinkeldey, Ph.D. to be "persuasive" because they were consistent with each other and supported by the overall objective medical evidence showing conservative care through primary care provider with generally normal psychiatric exam findings); Tr. 80 (listing Dr. Levasseur's August 28, 2019 opinions); Tr. 99-100 (listing Dr. Hinkeldey's January 6, 2020 opinions).)

As shown by the ALJ's decision, he adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination. (Tr. 14.) Furthermore, while the ALJ considered all of Plaintiff's impairments, he incorporated into the RFC assessment only those limitations resulting from the impairments, which he found to be supported by the record. In sum, even if an argument could be made that the ALJ erred in finding Plaintiff's anxiety and depression to be non-severe impairments, a remand is not warranted here, because the ALJ considered all of Plaintiff's impairments, both severe and non-severe, in combination at subsequent steps of the sequential evaluation process and his decision is supported by substantial evidence.

12

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 6, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record